FILED
U.S. DISTRICT COURT

2018 NOV 15 A 10: 02

DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

RECEIVED CLERK

NOV 14 2018

U.S. DISTRICT COURT

Gregory B. Smith (USB #6657)
GREG SMITH AND ASSOCIATES
111 East 5600 South, Suite 105
Murray, Utah 84107
Telephone: (801) 641-3397
*gs@justiceinutahnow.com*

*Attorney for Plaintiff, Chasi Reynolds and JNW Reynolds*

<table>
<tr><td colspan="2" align="center"><b>IN THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, CENTRAL DIVISION</b></td></tr>
<tr>
<td>CHASI REYNOLDS; and J.N.W.<br>REYNOLDS, her son;<br><br>        Plaintiffs,<br><br>*vs.*<br><br>KENT'S MARKET PHARMACY,<br>d.b.a. of PCO-KTA, LLC; and ERIC<br>ANDERSEN, an individual;<br><br>        Defendants.</td>
<td><b>COMPLAINT</b><br><br>JURY DEMAND REQUESTED<br><br><br>Case: 1:18−cv−00144<br>Assigned To : Shelby, Robert J.<br>Assign. Date : 11/14/2018<br>Description: Reynolds et al v. Kents<br>Market Pharmacy et al</td>
</tr>
</table>

Plaintiffs, Chasi Reynolds and her son, J.N.W Reynolds, by and through their

attorney, Gregory B. Smith of GREG SMITH AND ASSOCIATES, files this

Complaint against Defendants as follows:

## I.   PARTIES

1. Chasi Reynolds ("Chasi") is an individual citizen who resides in Tremonton,

   Box Elder County, State of Utah, and so does her minor, disabled son,

J.N.W Reynolds ("J.N.W.R."), who is also an individual citizen who resides in Tremonton, Box Elder County, State of Utah.

2. Defendant Kent's Market Pharmacy is a DBA of PCO-KTA, LLC, a domestic LLC (Entity Number: 10165376-0160; Company Type: LLC - Domestic; Address: 260 N. Main St., Brigham City, UT 84302; Registered Agent: Gregory N. Barrick; Registered Agent Address: 111 S. Main St., Ste. 2400, Salt Lake City, UT 84111).

3. Defendant Eric Andersen is an individual employed with Kent's Pharmacy in Tremonton, UT, and it is unknown where he lives.

## II.   JURISDICTION AND VENUE

4. The Court has jurisdiction under the Americans with Disabilities Act (42 U.S. Code § 12182 - Prohibition of discrimination by public accommodations.). Title III prohibits discrimination on the basis of disability in the activities of places of public accommodations (businesses that are generally open to the public and that fall into one of 12 categories listed in the ADA, such as restaurants, movie theaters, schools, day care facilities, recreation facilities, etc.).

5. Venue is proper in this Court because the events occured in Utah.

### III.   STATEMENT OF FACTS

6.  Kent's Pharmacy in Tremonton, Utah is located at 300 East Main Street, #1, Tremonton, Utah, 84337 (Phone: (435) 257-0446).

7.  Prior to the incident that occurred between the parties on or about September 6, 2018, Defendants had been filling prescriptions for Plaintiff (a disabled person) and her family members more than one (1) year.

8.  On or about September 6, 2018, Plaintiff visited Kent's Pharmacy located at 300 East Main Street in Tremonton, Box Elder County, Utah to fill a prescription for her disabled son, J.N.W.R.

9.  Prior to her visit, Plaintiff called Molina Healthcare ("Molina") to verify the prescription.

10.  The Molina agent told Plaintiff that if there were any issues, the pharmacist could call Molina.

11.  The Molina agent provided Plaintiff with several identification numbers (RS number, VN number and PCN number), which Plaintiff wrote down and gave to Defendants during her visit.

12.  Plaintiff also took a Notice of Action letter from Molina with her to the pharmacy.

13.  The Notice of Action approved a prescription.

14. From the point of view of Chasi, the pharmacist appeared to throw Plaintiff's note away (with the identification numbers written on it).

15. Plaintiff spent at least forty-five (45) minutes at the pharmacy trying to have her son's prescription filled, but was denied service by Defendants simply because Defendants did not want to deal with her.

16. Plaintiff was told she could only get a prescription for something different.

17. Plaintiff was told that she needed a new prescription, so Plaintiff called her doctor, Dr. Kellie Neilsen ("Dr. Neilsen").

18. Defendants alleged they never received the prescription Dr. Neilsen agreed to send over.

19. Plaintiff also called Molina to notify them that the prescription was not going through.

20. Plaintiff handed her phone to Kelsey (sp?) in the pharmacy, so that she could speak with the Molina agent.

21. Plaintiff overheard Kelsey say, *I'll just let her know she can't get it.*

22. Kelsey also said to Plaintiff *it is what it is.*

23. At one point, Kelsey questioned whether Molina's Notice of Action letter was fake (there was no reasonable basis for such).

24. When Plaintiff asked Kelsey to call Molina back, Kelsey refused to make that reasonable accommodation.

25. Ultimately, Plaintiff had to leave the pharmacy without filling her son's prescription.

26. Later, Plaintiff received a call from the ShopKo in Logan, UT stating they had a prescription ready for her.

27. Plaintiff does not know how the ShopKo in Logan received her prescription.

28. The employee with the ShopKo in Logan realized Plaintiff lived nearer to the ShopKo in Tremonton and offered to transfer the subscription there.

29. The ShopKo in Tremonton filled Plaintiff's prescription in full.

30. Plaintiff asked the ShopKo pharmacy how they were able to fill the prescription without issue.

31. The ShopKo pharmacy employee said they were able to fill the prescription by entering the date of the Notice of Action letter.

32. Plaintiff called Defendants to let them know (as a courtesy) that ShopKo was able to fill her son's prescription in full, which angered Defendants.

33. Plaintiff was put on hold.

34. The pharmacy manager, Eric, by way of retaliation, stated they could not allow this to happen and that Defendants would no longer fill Plaintiff's son's prescriptions.

35. Eric paused, and added that Defendants would no longer fill any prescriptions for Plaintiff or Plaintiff's family.

36. Then, Eric hung up on Plaintiff.

37. Plaintiff called back and reported what had happened to the store manager, Laney (sp?).

38. Laney stated he would look into the situation and call Plaintiff back.

39. *Two days later,* Laney called Plaintiff and told her that Eric has the right to refuse service to anyone.

40. Laney failed to apprise Plaintiffs of their rights under the ADA, and led Plaintiffs to believe they had no rights.

41. On or about September 21, 2018, Plaintiff and her son were in Salt Lake City for a medical procedure.

42. The hospital staff mistakenly sent Plaintiff's prescriptions to Kent's Pharmacy.

43. Plaintiff requested that her son's prescriptions be transferred to the ShopKo in Tremonton instead.

44. The hospital contacted Kent's Pharmacy.

45. Someone at Kent's Pharmacy told the hospital that they were no longer filling prescriptions for Plaintiff and hung up – again by way of retaliation.

46. Plaintiff has received a message from Defendants' corporate manager stating there was nothing more they could do before they hung up.

47. In other words, Defendants were angry and wrongly indignant because Chasi was trying to help her son, and just got sick of dealing with her and her child, so they lashed out by refusing to accommodate them in a reasonable way.

48. Helping Chasi get the prescription for her child would not have imposed any undue burden on Defendants.

49. Plaintiff has also received several calls and voicemail messages from Kent's Pharmacy wherein there is about two (2) minutes of dead air before the call ends.

50. Individuals employed for Primary Children's Hospital and ShopKo have reported to Plaintiff that when they reach out to Kent's Pharmacy, employees at Kent's Pharmacy are abrupt, unwilling to be of service, and will often hang up on them.

51. Generally, the employees of Kent's Market and Kent's Pharmacy are constructively, if not actually aware, that Plaintiff's son, J.N.W.R., is disabled:

   a. Plaintiff has taken J.N.W.R. with her to fill prescriptions at Kent's Pharmacy on several occasions.

   b. J.N.W.R. was with Plaintiff at Kent's Pharmacy when the incident occurred.

c.  For over one (1) year, Plaintiff and her family shopped Kent's Market and Kent's Pharmacy, frequently as a family.

d.  In the fall of 2017, J.N.W.R. was an employee for Kent's Market for about two (2) months as part of a school program.

e.  J.N.W.R. is on oxygen and has a portable oxygen tank that he carries with him.

f.  Cassie Hart (sp?), who was involved in the incident, attends the same church ward as Plaintiff and her family.

g.  Plaintiff's mother, who has no knowledge of the incident, brought about $10 worth of free balloons home from Kent's Market when she mentioned J.N.W.R. was her grandson.

h.  She's a scoutmaster who shops for her scout meetings at Kent's.

i.  She has an account at Kent's.

j.  She cannot afford to go elsewhere because of the time and expense of travel.

k.  Defendants have created a hostile environment that it's very awkward for Plaintiffs to go into Kent's.

52.  Plaintiffs have suffered lost sleep, lost time, anxiety and embarrassment by the actions of Defendants.

53. Plaintiffs have also suffered economically because of having to pay for gasoline to travel elsewhere, and extra wear and tear on their vehicle, etc.

54. The acts or omissions of Defendants were the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiffs.

## IV.    CAUSES OF ACTION

55. All the above facts are incorporated into this section.

56. Any cause of action supported by the facts, which are known or now unknown.

57. Violation of the ADA:  Defendants' 1) refusal to accommodate Plaintiffs, and 2) Defendants' retaliation against Plaintiffs.

58. Violation of the Utah's Consumer Protection laws.

59. Defendants do not advertise that they refuse to accommodate the disable, so Plaintiffs believed they could shop at Kent's, and that Kent's would honor the law.

60. Defendants' actions were willful and malicious.

## V.    JURY DEMAND

Plaintiff demands a jury trial.

## VI.   PRAYER FOR RELIEF

That the Court order the following:

1. That Defendants reasonably accommodate Plaintiffs in their efforts to obtain whatever they need to help the child at issue, such as providing medications that Kent's can procure or has.

2. That Defendants pay all of the Plaintiffs' legal fees and costs of this action.

3. If allowable, that general and punitive damages be awarded.

4. The pre- and post-judgment interest be awarded.

5. That at least $2,000 be awarded under Utah's Consumer Protection laws.

6. Any other relief that the Court deems fair and just.

DATED this 5th day of November, 2018.

GREG SMITH AND ASSOCIATES

/s/ Gregory B. Smith
GREGORY B. SMITH
*Attorney for Plaintiffs*

## VI.   PRAYER FOR RELIEF

That the Court order the following:

1. That Defendants reasonably accommodate Plaintiffs in their efforts to obtain whatever they need to help the child at issue, such as providing medications that Kent's can procure or has.

2. That Defendants pay all of the Plaintiffs' legal fees and costs of this action.

3. If allowable, that general and punitive damages be awarded.

4. The pre- and post-judgment interest be awarded.

5. That at least $2,000 be awarded under Utah's Consumer Protection laws.

6. Any other relief that the Court deems fair and just.

DATED this 5th day of November, 2018.

GREG SMITH AND ASSOCIATES

GREGORY B. SMITH
*Attorney for Plaintiffs*