IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHASI REYNOLDS and J.N.W. REYNOLDS, her son;<br><br>    Plaintiffs,<br><br>v.<br><br>KENT'S MARKET PHARMACY d.b.a. of PCO-KTA, LLC and ERIC ANDERSEN, an individual,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:18-cv-144-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

    This action concerns a dispute about an alleged violation of the Americans with Disabilities Act (ADA) and Utah's Consumer Protection laws. Plaintiffs Chasi and J.N.W. Reynolds assert Defendants Kent's Market Pharmacy and its manager, Eric Andersen, violated Plaintiffs' rights under the ADA by refusing service to them and filing a fraud claim with their insurance company. Before the court is Defendants' Motion for Summary Judgment, in which they ask the court to dismiss each of Plaintiffs' claims with prejudice. For the reasons explained below, Defendants' Motion[1] is GRANTED.

---

[1] Dkt. 16.

## BACKGROUND[2]

Before this litigation ensued, Chasi Reynolds was a regular customer of Kent's Market Pharmacy (the Pharmacy).[3] She frequented the Pharmacy to fill prescriptions for herself and her son, J.N.W.[4] Eric Andersen managed the Pharmacy during the period in question.[5]

On or around September 6, 2018, Reynolds went to the Pharmacy to have a prescription filled.[6] Prior to her visit, she called her insurance company to verify her prescription.[7] Reynolds asserts she spent at least forty-five minutes at the pharmacy trying to get the approved prescription filled but was offered only an alternative prescription.[8] During this time, a Pharmacy employee questioned Reynolds's documentation and refused Reynolds's request to call back the insurance provider.[9] Reynolds decided to leave the Pharmacy without the prescription.[10] She ultimately had the prescription filled at a local Shopko pharmacy.[11]

Reynolds later called the Pharmacy to inform them she had successfully filled her prescription.[12] During that call, Andersen informed Reynolds that the Pharmacy would no longer fill prescriptions for her or anyone else in her family.[13] Reynolds complained of

---

[2] Because this Order considers a motion for summary judgment, the court will "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000) (citation omitted).

[3] Dkt. 3 ¶ 7.

[4] *Id.*

[5] *Id.* ¶ 34.

[6] *Id.* ¶ 8.

[7] *Id.* ¶ 9.

[8] *Id.* ¶¶ 15–16.

[9] *Id.* ¶¶ 23–24.

[10] *Id.* ¶ 25.

[11] *Id.* ¶ 29.

[12] *Id.* ¶ 32.

[13] *Id.* ¶¶ 32–35.

Andersen's behavior to the store manager but was told Andersen could refuse service to anyone.[14] Sometime after this encounter, Defendants filed a fraud claim with Medicaid concerning Reynolds.[15]

Plaintiffs contend the Pharmacy's employees treated them poorly because of Chasi's and J.N.W.'s disabilities.[16] In contrast, Defendants assert they refused to serve Chasi because she was a "difficult and demanding customer" who demanded large amounts of employees' time.[17] For example, Defendants explain Chasi often made unreasonable requests, such as demanding prescriptions "in amounts and doses higher than written" and "requir[ing] Kent's . . . employees to spend anywhere from 20 minutes to an 1 hour on the phone" with Plaintiffs' insurance company.[18] Defendants maintain Plaintiffs' alleged disabilities played no part in their decision to refuse Chasi service.[19]

Plaintiffs initiated this action against Defendants on November 15, 2018. Plaintiffs claim Defendants (1) violated the Americans with Disabilities Act by (a) refusing to accommodate them and (b) retaliating against them and (2) violated Utah's Consumer Protection laws.[20] Defendants now move for summary judgment on each of Plaintiffs' claims.

---

[14] *Id*. ¶¶ 37–39.

[15] Dkt. 17 at 10. Plaintiffs do not specify when the fraud claim was filed or by whom. *See id.*, Ex. 1 (Decl. of Chasi Reynolds) ¶ 61 ("Thereafter, Kent's Pharmacy retaliated against me by filing a fraud claim with Medicaid that turned out to be without merit.").

[16] Dkt. 17 at 9.

[17] Dkt. 16 at 7.

[18] *Id*.

[19] Dkt. 16 at 9–10.

[20] Dkt. 3 ¶¶ 57–58.

3

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as matter of law."[21] A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22] Under this standard, the court will "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[23] The moving party "has the initial responsibility to show that 'there is an absence of evidence to support the nonmoving party's case.'"[24] If this is done, "the burden shifts to the nonmoving party to . . . establish . . . a genuine issue of material fact."[25]

## ANALYSIS

Defendants ask the court to enter judgment dismissing Plaintiffs' claims with prejudice because they argue Plaintiffs cannot show Defendants (1) violated the ADA by (a) refusing to accommodate Plaintiffs or (b) retaliating against them, or (2) violated Utah's Consumer Protection laws.[26] The court addresses Plaintiffs' ADA claims and then their Utah Consumer Protection law claim.

---

[21] Fed. R. Civ. P. 56(a).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *Pirkheim*, 229 F.3d at 1010.

[24] *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[25] *Id.*

[26] Dkt. 16 at 1–2.

## I.     ADA VIOLATION

Although the Complaint does not specify what causes of action Plaintiffs are pursuing, they appear to assert two violations of the ADA—one based on Title III and one for retaliation.[27] Defendants move for summary judgment on both claims.

### A.  Plaintiffs Fail to Present Sufficient Evidence That Defendants Discriminated Against Them Because of Plaintiffs' Alleged Disabilities

Plaintiffs argue Defendants violated the ADA by refusing them service and failing to properly accommodate them.[28] Defendants assert their decision to refuse to serve Chasi was not made "on the basis of disability."[29] The court agrees with Defendants.

Title III of the ADA protects individuals against discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[30] To prove Defendants violated Title III of the ADA, Plaintiffs must show:

> (1) Plaintiffs are disabled within the meaning of the ADA; (2) Defendants are private entities that own, lease, or operate the place(s) of public accommodation; (3) Plaintiffs were deprived of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; and (4) Defendants failed to make reasonable modifications that would accommodate Plaintiffs' disabilities without fundamentally altering the nature of the public accommodation.[31]

---

[27] Dkt. 17 at 8–11.  Plaintiffs also appear to assert a claim under Title II of the ADA, *see id.*, but that provision prohibits discrimination by public entities, s*ee* 42 U.S.C.A. § 12132.  Because the Pharmacy is not a public entity under Title II, *see id.* § 12131(1) (defining public entity), the court grants Defendants summary judgment on Plaintiffs' Title II claim.  Alternatively, if Plaintiffs intended to assert their Title II arguments under Title III, the court considers them to the extent applicable.

[28] Dkt. 17 at 11.

[29] Dkt. 16 at 7.

[30] 42 U.S.C.A. § 12182(a).

[31] *Civil Rights Educ. & Enforcement Ctr. v. Sage Hospitality Res., LLC*, 222 F. Supp. 3d 934, 956 (D. Colo. 2016).

Further, the discrimination must occur "on the basis of . . . disability."[32]

Plaintiffs assert Chasi, J.N.W., and Chasi's other children are all disabled[33] and contend Defendants were aware of these disabilities from Plaintiffs' interactions with the Pharmacy and social interactions with Pharmacy employees at church.[34] Although Plaintiffs do not identify Chasi's specific disabilities, they specify that J.N.W.'s disabilities include pulmonary hypertension, autism, ADHD, and chronic illness.[35]

Defendants acknowledge the Pharmacy is a place of "public accommodation," but they argue Plaintiffs fail to provide sufficient evidence to establish any genuine dispute relating to the other elements of Plaintiffs ADA claim.[36] Specifically, Defendants argue Plaintiffs failed to submit evidence they are disabled, and, even if they are disabled, Defendants did not know of Plaintiffs' disabilities.[37] Defendants further contend that even if the court finds a disability does exist, Plaintiffs fail to show how their alleged disabilities substantially limit them.[38]

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual."[39] Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

---

[32] *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677 (2001).

[33] Dkt. 17 at 9.

[34] Dkt. 3 ¶ 51.

[35] Dkt. 17 at 4.

[36] Dkt. 16 at 5.

[37] *Id*. at 5–7.

[38] *Id.* at 6; Dkt. 18 at 9.

[39] 42 U.S.C. § 12102(1). The statute provides two additional definitions of disability, "(B) a record of such an impairment; or (C) being regarded as having such an impairment." As neither party discusses either alternative definition, the court focuses on the first definition.

6

thinking, communicating, and working."[40]  A medical diagnosis alone is insufficient to establish a disability.[41]  "[R]ather, the ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial."[42]

The court first considers whether Chasi or J.N.W. is substantially limited by their respective disabilities.  Beginning with Chasi, Defendants maintain Plaintiffs produced no evidence that she is disabled.[43]  Thus, to defeat Defendants' Motion, Plaintiffs were required to bring forward evidence of Chasi's disability.[44]  However, Plaintiffs submitted no evidence showing Chasi is disabled beyond the bare statement in Chasi's declaration stating, "I am a disabled person."[45]  Plaintiffs offer no other evidence documenting or describing her disability.  Such "unsupported conclusory allegations do not create a genuine issue of fact."[46]  Nor is there any explanation of how her alleged disability limits any of her major life activities.  Without more, the court cannot conclude Chasi's disability substantially limits her in any way.[47]  On the record before it, the court concludes Chasi has not shown she is disabled under the ADA.

---

[40] *Id*. § 12102(2)(A).

[41] *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010) (citing *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 603 (11th Cir. 2008)).

[42] *Johnson v. Sedgwick Cty. Sherriff's Dep't*, 461 F. App'x 756, 759 (10th Cir. 2012) (quoting *Wilkerson*, 606 F.3d at 1262).

[43] Dkt. 16 at 5.

[44] "The Supreme Court long ago established that a defendant may support its motion for summary judgment on an issue which the plaintiff bears the burden of proof by arguing that the record lacks any evidence in the plaintiff's favor." *Gen. Steel Domestic Sales, LLC v. Chumley*, 627 F. App'x 682, 688 (10th Cir. 2015) (citing *Celotex*, 477 U.S. at 322–25).

[45] Dkt. 17, Ex. 1 ¶ 1.

[46] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (quoting *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010)).

[47] *Wilkerson*, 606 F.3d at 1262 ("[T]he ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.") (quoting *Enwonwu*, 286 F. App'x at 603).

Plaintiffs' claim suffers similar defects as to J.N.W. Plaintiffs indicate J.N.W. suffers from hypertension, autism, ADHD, and "chronic illnesses."[48] But while J.N.W.'s conditions potentially qualify as disabilities under the ADA, Defendants contend Plaintiffs "have not met their burden of demonstrating . . . the effects [J.N.W.'s] disabilities have on his major life activities."[49] The court agrees, and this is fatal to Plaintiffs' claim. For instance, in *Johnson v. Sedgwick*, the plaintiff submitted a report documenting he had ADHD.[50] However, the Tenth Circuit upheld the district court's grant of summary judgment to the defendant because the plaintiff did not demonstrate his ADHD substantially limited him.[51] The same is true here. Plaintiffs provide no information about the severity of J.N.W.'s impairments or how they limit him. Thus, the court must find on this record that J.N.W. is not disabled under the ADA.

Further, even if Chasi and J.N.W. could show they are disabled under the ADA, Defendants argue their decision to deny service to them was not influenced by any purported disability but because Chasi was a "difficult and demanding customer."[52] The ADA states "[i]t shall be discriminatory to . . . deny . . . services . . . to an individual or entity because of [a] *known* disability."[53] Plaintiffs contend Pharmacy employees were aware of J.N.W.'s disability (1) because of their social interactions with him at church and (2) because the employees saw J.N.W. with a portable oxygen tank.[54] It is true that two Pharmacy employees acknowledge they knew J.N.W. suffered from some medical condition, but they did not know what that condition

---

[48] Dkt. 17 at 4.

[49] Dkt. 16 at 6.

[50] 461 F. App'x at 759.

[51] *Id.*

[52] Dkt. 16 at 7.

[53] 42 U.S.C. § 12182(b)(1)(E) (emphasis added).

[54] Dkt. 3 ¶ 51.

was.[55] But a single indicia of disability—here, J.N.W.'s use of an oxygen tank—does not mean a defendant knows that individual is disabled under the ADA.[56] The court concludes Plaintiffs have failed to come forward with sufficient evidence to create a genuine dispute of fact concerning Defendants' lack of knowledge about J.N.W.'s alleged disability.

In short, Plaintiffs failed to submit evidence from which a jury could conclude either Chasi or J.N.W. is disabled under the ADA or that Defendants' decision to deny Plaintiffs service was made on the basis of their alleged disabilities. Accordingly, Plaintiffs' claim for discrimination under Title III of the ADA fails, and the court grants summary judgment in favor of Defendants.[57]

      B. <u>Plaintiffs Fail to Present Sufficient Evidence Defendants Retaliated Against Them</u>

Plaintiffs next argue Defendants violated the ADA's retaliation provision by filing a fraud claim with Medicaid against them that was "without merit."[58] Defendants respond that Plaintiffs were not engaged in protected activity and suffered no adverse action.[59] The court agrees with Defendants.

---

[55] Dkt. 16, Ex. B (Decl. of Tandi Oyler) ¶ 5; *id.*, Ex. D (Decl. of Kelsey Hodge) ¶ 5.

[56] *See J.H. ex rel. J.P. v. Bernalillo Cty.*, No. CIV 12-0128 JB/LAM, 2014 WL 3421037, at *103–04 (D.N.M. July 8, 2014) (finding a school resource officer did not know the plaintiff was disabled even though the officer knew the plaintiff was in a special education class).

[57] Because the court concludes the Reynolds are not disabled under the ADA, it declines to take up Defendants' alternative argument that "[e]ven if there were discrimination for the purposes of Title III, Ms. Reynolds has not identified a *reasonable* accommodation that Kent's Market Pharmacy would be obligated to make for her." Dkt. 16 at 8.

[58] Dkt. 17 at 10.

[59] Dkt. 16 at 9–10; Dkt. 18 at 9–10.

To prove retaliation under the ADA, Plaintiffs must show (1) they engaged in a protected activity; (2) they were subjected to an adverse action; and (3) there was a causal connection between the protected activity and the adverse action.[60]

Here, Plaintiffs make no attempt to identify what protected activity they were engaged in. This alone compels the court to dismiss Plaintiffs' retaliation claim.[61] Moreover, while Plaintiffs point to the fraud claim Defendants' filed with Medicaid as evidence of adverse action, they cite no authority that filing such a claim constitutes adverse action.[62] And even if the fraud action filing could be considered an adverse action, Plaintiffs fail to present evidence of a causal connection between the (unidentified) protected activity and the alleged adverse action. Because Plaintiffs cannot meet their burden on any of the three elements to prove a retaliation claim, the court grants Defendants summary judgment.

## II. UTAH CONSUMER PROTECTION LAWS VIOLATION

Plaintiffs list in their Complaint a claim for violation of "Utah's Consumer Protection laws."[63] Because Plaintiffs identify no specific cause of action, Defendants interpreted that claim as one under the Utah Consumer Sales Practices Act (UCSPA).[64] Plaintiffs did not dispute that characterization.

---

[60] *Foster v. Mt. Coal Co.*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)).

[61] *See id.* at 1187 ("First, a plaintiff must show an adequate request for an accommodation sufficient to qualify as protected activity.").

[62] Dkt. 17 at 10. The court is skeptical that the good faith filing of a fraud claim would qualify as an adverse action. Here, although Medicare determined the claim was without merit, there is no evidence Defendants filed the claim in spite as Plaintiffs assert. Indeed, Andersen testified that Chasi regularly tried to have the pharmacy fill prescriptions that were different than written. Dkt. 16, Ex. A ¶ 3 ("For example, Ms. Reynolds would demand a 90-day supply of medication when the prescription only allowed for 30 days.").

[63] Dkt. 3 ¶ 58.

[64] Dkt. 16 at 4 n.1. Defendants explain that the amount of damages Plaintiffs seek for the alleged violation of Utah's consumer protection laws mirrors the statutorily recoverable amount under the UCSPA. *Id.*

To succeed on a claim under the UCSPA, a plaintiff must show the defendant engaged in deceptive or unconscionable acts or practices.[65]  Defendants argue they never engaged in any such act or practice and that Plaintiffs possess no evidence to support their claim.[66]  Plaintiffs offer no response.  Thus, Plaintiffs fail to demonstrate a genuine dispute of material fact exists, and Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons explained above, Defendants' Motion is GRANTED.[67]  The Clerk of Court is directed to close the case.

SO ORDERED this 11th day of August 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[65] Utah Code Ann. § 13-11-2.

[66] Dkt. 16 at 10–11.

[67] Dkt. 16.

11